## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| **GESNER JEROME, MOISE DELICE, JOSEPH JULNER HONORE, UDOVIC JEAN-FRANCOISE, MARC D. RAPHAEL, and SENOPHA CHOUTE,** | |
| **Plaintiffs,** | **Case No.: 2:12-CV-610-FtM-DNF** |
| **v.** | |
| **THE HERTZ CORPORATION, a Delaware Corporation, d/b/a Advantage Rent A Car; HERTZ GLOBAL HOLDINGS, INC., a Delaware Corporation, d/b/a Advantage Rent A Car; and SIMPLY WHEELZ, LLC, a Delaware Corporation, d/b/a Advantage Rent A Car, and TERRY GIBSON, an Individual,** | |
| **Defendants.** | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs, GESNER JEROME, MOISE DELICE, JOSEPH JULNER HONORE, UDOVIC JEAN-FRANCOISE, MARC D. RAPHAEL, and SENOPHA CHOUTE, by and through undersigned counsel, hereby file this Memorandum of Law in Opposition to Defendants THE HERTZ CORPORATION, HERTZ GLOBAL HOLDINGS, INC., and TERRY GIBSON's Motion for Summary Judgment.

1

## I.  __INTRODUCTION__

1.      Initially, after further evaluation, research, and analysis, Plaintiffs have elected not to pursue a claim or remedy for tortious interference with a business relationship.  This is not based upon any argument Defendants have asserted, but rather because the allegedly interfering defendant must be a disinterested third party, a stranger to the business relationship.  *Ernie Haire Ford, Inc. v. Ford Motor Co*., 260 F.3d 1285, 1294 (11th Cir.2001).  One is not a "stranger" to a business relationship if he "has any beneficial or economic interest in, or control over, that relationship." *Nimbus Tech., Inc. v. SunnData Prods., Inc*., 484 F.3d 1305, 1309 (11th Cir.2007). As the case has evolved, significant record evidence has come to light showing that All Alliance USA and The Hertz Corporation were joint employers of the Plaintiffs, as Plaintiffs maintain in connection with their claim under 42 U.S.C. §1981.  Plaintiffs believe that such evidence is incompatible with a claim that would require them to establish that The Hertz Corporation was a stranger to the relationship between Plaintiffs and All Alliance.  Thus, Plaintiffs will address only the §1981 claim herein.

2.      While Hertz Global Holdings, Inc. is at least the indirect owner of the stock of The Hertz Corporation (Frecker decl. ¶ 6), Plaintiffs have concluded that there is insufficient record evidence to raise an issue of material fact as to whether Hertz Global Holdings, Inc. was, itself, doing business as Advantage Rent A Car in Florida and/or as to whether it was a joint employer of Plaintiffs.  As such, Plaintiffs will not further pursue any claim against Hertz Global Holdings, Inc.  However,  as will become manifestly clear, there is a plethora of record evidence showing that (a) The Hertz Corporation (a/k/a "Hertz") was doing business in Florida as Advantage Rent A Car and/or Advantage; (b) that The Hertz Corporation exercised sufficient control over the work of Plaintiffs at the subject Ft. Myers Advantage location, such that it was a

2

joint employer of Plaintiffs along with All Alliance; and (c) that a prima facie case of race discrimination under section 1981 can be established against The Hertz Corporation.  As shown in Plaintiffs' Request for Judicial Notice and the excerpt from the 2012 Annual Report filed by "Hertz" and/or "Hertz Global Holdings, Inc." attached thereto (Pl. Exh. 2 ), "Global Holdings means Hertz Global Holdings, Inc.," which is the "holding company," while "**Hertz means The Hertz Corporation**," and is the "**primary operating company**." (emphasis supplied). Accordingly,  The Hertz Corporation means, and shall be referred to herein as, "Hertz."

3.    Plaintiffs strenuously object to Defendants' false and malicious representation, stating that Plaintiffs have falsely alleged that the Hertz Defendants were doing business as (d/b/a) "Advantage Rent A Car" and that this "was known to be false when made." (Doc. 81 at 2).  As Plaintiffs will demonstrate, the record, <u>including, but not limited to, evidence submitted by Defendants, themselves,</u> conclusively supports that Hertz was, in fact, doing business as Advantage Rent A Car.  Furthermore, Plaintiffs disagree with the misleading characterization of Simply Wheelz, LLC ("Simply Wheelz") throughout the within motion, as "Advantage." (*Id.* at p. 2 *et. seq.*)  As will be clearly shown by the evidence, it would be far more accurate to refer to <u>Hertz</u> as "Advantage."  And, to the extent Defendants have devoted a significant portion of their motion to attempting to exonerate Simply Wheelz LLC from liability (*Id.* at 14; 17-21 & Decl. Vassar), Plaintiffs object, as Defendants have violated the Stay imposed by the Court (Doc. 80).

4.    Defendants have further attempted to mislead the Court in mischaracterizing Plaintiffs' theory of <u>joint employer</u> as being a very different theory, known as the "single employer" or "single enterprise" theory. (Doc. 81 at 14-15)  Interestingly, the very  Third Circuit case upon which Defendants purport to rely, *N.L.R.B. v. Browning-Ferris Industries of*

*Pennsylvania, Inc*., 691 F.2d 1117 (3d Cir.1982), clearly articulates the distinction between the

single employer and joint employer theories:

> The "joint employer" and "single employer" concepts are distinct. Admittedly, there has been a blurring of these concepts at times by some courts and by the Board. However, as the Supreme Court itself has recognized, the two concepts approach the issue of "who is the employer," from two different viewpoints. As such, different standards are required for each-that enunciated in *Radio Union v. Broadcast Service of Mobile, Inc.* [380 U.S. 255 (1965)] to apply in the "single employer" context and that set out in *Boire v. Greyhound Corp.* [376 U.S. 473 (1964)] to apply in the "joint employer" context.

(*See Browning-Ferris*, 691 F.2d at 1122). The *Browning-Ferris* Court further noted:

> A "single employer" relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a "single employer"… In answering questions of this type, the Board considers the four factors approved by the *Radio Union* court: *(1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership*. Thus, the "single employer" standard is relevant to the determination that "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise…" In contrast, the "joint employer" concept *does not depend upon the existence of a single integrated enterprise and therefore the above-mentioned four factor standard is inapposite*. Rather, a finding that companies are "joint employers" assumes in the first instance that companies are "what they appear to be" - independent legal entities that have merely "historically chosen to handle jointly... important aspects of their employer-employee relationship…" (*Id.* at 1122).

Plaintiffs' theory herein is not based upon the "single employer" doctrine, and it is not

subject to the inapposite 4-part test articulated by the *Radio Union Court* and the Eleventh

Circuit in *McKenzie v.Davenport–Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987).

(See Doc. 81 at 14-15, misstating joint employer test and holdings of the 3d and 11th Circuits).

It has long been Plaintiffs position that there existed a joint employment based upon the Supreme

Court's decision in *Boire*, *supra*, and other authority, as Plaintiffs discussed in detail, in their

Motion for Leave to Amend Complaint (Doc. 62) which was granted by the Court. (Doc. 63)

     5.      Still further, the motion for summary judgment misrepresents that "Plaintiffs

claim is wholly dependent upon the hearsay statement Plaintiffs Jerome and Choute say they

heard from Ms. Jimenez." (Doc. 81 at 5).  Defendants are referring to the deposition testimony of Plaintiffs Jerome and Choute that the All Alliance supervisor, Sonia Jimenez, stated to them that Defendant Gibson did not like Black people, and that is why they were being terminated.  Once again, in their Motion to Amend Complaint (Doc. 62) Plaintiffs explained that they sought to amend to allege a joint employer theory because such theory was relevant to setting forth a prima facie case, through circumstantial evidence, under the *McDonnell Douglas-Burdine* framework.[1] (See Doc. 62, point III).  The establishment of such a prima facie case is not dependent, in any way, much less "wholly dependent," upon direct evidence of Mr. Gibson's antipathy toward Black people.  Yet, not only have Defendants failed to address the issue of a circumstantial evidence prima facie case under §1981, but have actively sought to mislead the Court as to the nature of Plaintiffs' §1981 claim.

6.    Defendants' aver that: "The only representative or agent from The Hertz Defendants Plaintiffs deposed was Bradford Simmons, the human resources business partner for the Southeast Region for The Hertz Corporation."  This is highly misleading, because it ignores some very key facts.  In his deposition, Trey Vassar testified that he was Regional General Manager, Eastern Region, for Advantage Rent A Car operations, and that in 2009, Hertz acquired Advantage Rent A Car through bankruptcy. (Vassar Dep. 6:11-19; 10:11-20).  He further testified that he knew Advantage Rent A Car was affiliated with Hertz, and that, prior to the recent sale of Advantage, by Hertz, to Franchise Services of North America, Inc., Hertz owned the Advantage brand. (*Id*. at 14:25; 15:1-15; 16:22-25; 17:1-16).  Moreover, the fact that Hertz, which Defendants admit was the managing member of Simply Wheelz (Decl. Frecker ¶ 5), purported to file the name, "Advantage Rent A Car" as a "fictitious name" owned by Simply

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Wheelz, is not dispositive as to whether or not Hertz was, in fact, doing business in Florida as Advantage Rent A Car.  Far to the contrary, as will be shown, there is overwhelming record evidence that Hertz was doing business in Florida, as Advantage Rent A Car.  There has been a transparent attempt to "clean up" Mr. Vassar's deposition testimony with his later-filed declaration.  During his October 31, 2013 deposition, Vassar testified that he was the Regional Manager for the Eastern Region for Advantage Rent A Car operations.  When Vassar was then queried as to his knowledge of Simply Wheelz, he testified that he had absolutely no idea of who or what Simply Wheelz even was. (Vassar Dep. 6:11-19; 12:22-25; 13:1-3).  And yet, in his declaration, soon thereafter, on December 20, 2013, Mr. Vassar has miraculously emerged as being the "Regional Manager for the Eastern Region for Simply Wheelz, LLC."  This is, indeed, a very tangled web.  Further, all 21 paragraphs of Vassar's declaration are pointedly dedicated to exonerating Simply Wheelz from liability, again, in violation of the Stay imposed by the Court.

7.      Defendants have conceded that the formal responses filed with the EEOC on behalf of All Alliance by its counsel, Stephen Matzuk (the "Matzuk Documents"), are "relevant." (Doc. 81, fn. 7).  However, they contend that the Matzuk Documents (copies of which are attached to the Barden Affidavit) are inadmissible because they do not qualify as "admissions" under FRE 801.  But Plaintiffs do not contend that the Matzuk Documents constitute admissions under FRE 801.  Rather, there are two independently sufficient reasons for why the Matzuk Documents are admissible.  One, they qualify as Records of a Regularly Conducted Activity under FRE 803(6), as shown by Barden Affidavit.  Mr. Barden is a qualified witness, who received and kept the documents in the course of a regularly conducted activity of the Lee County Office of Equal Opportunity.  Two, Plaintiffs' counsel showed Mr. Matzuk (the declarant) copies of the documents at his deposition.  Matzuk verified that they were correct

copies of the formal response documents that he himself had prepared and submitted to the

EEOC, pursuant to his investigation, and verified his signature thereon.  The pertinent portions

were then read into the record in his presence, and he confirmed that he believed the matters set

forth therein were true and accurate "when it was given to Mr. Barden" and the "EEOC." (See

Matzuk Dep. 13 through 52:1-7 & Exhs. 3-6 thereto).

8.     Defendants have further asserted: (a) that "Neither the Hertz Defendants nor

Advantage hired the All Alliance employees or the Plaintiffs directly; they were all hired by All

Alliance"  and (b) that "German Barbosa, the owner of All Alliance, testified that All Alliance

did not supply 'Hertz' with cleaners because 'Hertz' had its own employees perform such tasks."

(Doc. 81 at 3-4).  As will be discussed more particularly *infra*, the issue of whether Plaintiffs can

be deemed to have suffered an "adverse employment action" at the hands of Hertz is an element

of establishing a prima facie case of race discrimination against Hertz under the *McDonnell*

*Douglas-Burdine* analytical framework.  Plaintiffs' termination from employment (albeit an

issue of fact disputed by Hertz) can be attributed to both All Alliance and Hertz if Plaintiffs can

show (and they can) that there exists at least a material issue of fact as to the existence of a joint

employment.  Further, even assuming that Plaintiffs were "hired" by All Alliance, as opposed to

"Hertz" or "Advantage," that would not vitiate joint employment.  Neither the seminal joint

employer case of *Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894,11 L.Ed.2d 849 (1964)*,

nor any other decision, requires that Plaintiffs would have to have been "hired by" Hertz for

Hertz to be deemed a joint employer of the Plaintiffs.  In fact, it is the very essence of the joint

employment doctrine that one who is not the nominal employer of the plaintiff (i.e. Hertz) "while

contracting in good faith with an otherwise independent company [i.e. All Alliance], has retained

for itself sufficient control of the terms and conditions of employment of the employees who are

employed by the other employer." *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1360 (11th Cir.1994).  Moreover, in *Boire*, the Supreme Court noted that the question of whether Greyhound possessed sufficient indicia of control to be deemed an "employer" is a factual issue, and rejected the argument that Greyhound could not conceivably be an employer of employees who were hired, paid, transferred and promoted by an independent contractor (i.e. Floors). *Boire*, 386 U.S at 481.  As to Barbosa's testimony that All Alliance did not supply "Hertz" with cleaners because "Hertz" had its own employees perform such tasks, it entirely begs the question of whether Hertz, in fact, exercised sufficient control over Plaintiffs such that there would be a genuine issue of material fact as to joint employment.

9.      Plaintiffs are happy to accept Defendants' admission that The Hertz Corporation was the managing member of Simply Wheelz. (Decl. Frecker ¶ 5).  However, Defendants additionally assert that "at no time were any of The Hertz Defendants doing business in Florida as Advantage Rent A Car." (Doc. 81 at 3).  In this regard, attached to Defendants' motion is a copy of a document purporting to show that the fictitious name, "Advantage Rent A Car," was registered "under Simply Wheelz, LLC."   This sounds good "on paper."  However, it does not alter the fact that the representation to this Court that, "at no time were any of The Hertz Defendants doing business in Florida as Advantage Rent A Car," is incorrect, as will be shown.

10.     It is important to note that Defendants have not included in their Exhibit 22, or otherwise disclosed any contact between All Alliance and any of the Defendants in this case covering the subject Ft. Myers Advantage location.  Mr. Vassar testified that the subject Ft. Myers Advantage location is considered to be the Ft. Myers "Airport" location of Advantage Rent A Car. (Vassar Dep. 20-21).   Yet, notwithstanding that Defendants have not disclosed or submitted any contract covering All Alliance's provision of services at the subject Ft. Myers

Airport location, there are numerous documents attached as Defendants' Exhibit 22 to the within motion purporting to be contracts covering All Alliance's provision of services at major airports throughout Florida.  Conspicuously absent, however, is any contract with All Alliance covering the Ft. Myers Airport Advantage location.  Plaintiffs' counsel requested in an interrogatory (Pl. Exh. 20) that Hertz identify the individual most familiar with contracts and relationship between All Alliance USA and Advantage Rent A Car between the year 2010 and 2012, and Hertz provided the name Brad Simmons.  For, at his deposition, Mr. Simmons testified that he was a regional "human resources" executive, and disavowed any knowledge of such contracts, claiming that it was an "operations" issue.  (Simmons Dep. 5:21-25; 6:10-25; 7; 9:1-8).  The mysterious absence of any contract between All Alliance and Advantage Rent A Car covering the Ft. Myers Airport Advantage location, and Hertz's deceptive production of an individual who knew nothing regarding contracts, are important facts that should be considered in conjunction with the various documents Defendants have submitted as Exhibit 22 (Doc. 82) to their motion (Doc. 81).  For example, the document entitled "Master Goods and Services Agreement," purports to be between All Alliance and "Simply Wheelz d/b/a Advantage Rent A Car." (Doc. 82, p. 2, ID 749).  Yet, later in the Agreement (*Id*. at p.8, ID 755), under section 18, "NOTICES," prescribing the obligations of the parties as to any "notice, demand, request or approval required or permitted to be given under this Agreement…"  it clearly states: "**If to Vendor** [All Alliance]: 5454 Hoffner Ave, Suite 105, Orlando, FL 32812."  "**If to Advantage**: **The Hertz Corporation**, 225 Brae Boulevard Park Ridge, NJ 07656 **Attention Corporate Purchasing**."  This alone, belies Defendants' representation that "at no time were any of The Hertz Defendants doing business in Florida as Advantage Rent A Car." (Doc. 81 at 3), and it manifestly shows Hertz's specific involvement and entwinement with Advantage.  Moreover, it

raises, at minimum, an inference, if indeed not conclusive evidence, that The Hertz Corporation

was the real party in interest to the foregoing Agreement with Alliance.  Furthermore, Exhibit A-

1 to the foregoing agreement, entitled, "Statement of Work – Orlando Airport," purporting to be

between "Simply Wheelz, LLC dba Advantage Rent-A-Car ('Advantage')" and All Alliance,

states as follows: "(q) Vendor shall provide absolute coverage for the stated hours, including all

breaks and relief periods.  **Hertz management** can relieve guards for a few minutes for

washroom breaks, however guards should manage their time accordingly and Vendor shall assist

in this matter with their Field Supervisors, at no additional charge." (Doc. 82, p. 12, ID 759).

Also attached to Exhibit 22 is a document entitled, "Statement of Work – Fort Lauderdale

International Airport/Miami International Airport," once again purporting to be between "Simply

Wheelz, LLC dba Advantage Rent-A-Car ('Advantage')" and All Alliance.  This document

provides: "3. Standard Operating Procedures (a) Vendor shall design and implement **with the**

**concurrence of Hertz**, standard operating procedures.  The purpose of these procedures shall be

to coordinate manpower efforts and skills and other designated resources through the

establishment of clearly defined objectives." (*Id.*, p. 14, ID 761).  It further states: "4. Contact

Personnel (a) Vendor will be advised of [sic] the **Hertz Coordinator** of each Managed Location.

**The Hertz Coordinator** will be the main point of contact for regular operations with the Vendor

Program Manager." (*Id.*)  The remainder of the page, containing explicit provisions concerning

"Staffing Notification Methodologies" and "Workday Instruction Conveyance," is permeated

with repeated references to the control and authority of "**The Hertz Coordinator**" and/or to the

various obligations of the Vendor to "**The Hertz Coordinator**." (*Id.*)  On the next page it

provides that "**Hertz** will provide facilities to photograph all Vendor employees," and under "8.

Training," it states, "**Hertz** will provide a classroom setting, introductory skills manual, and

safety videos for Vendor's use." (*Id*., p. 15, ID 762).  The *piece de resistance* is the signature line of this document that nominally purports to be between Simply Wheelz dba Advantage and All Alliance, wherein the only signatories are boldly identified as "**THE HERTZ CORPORATION**" (by Kathryn A. Dissimino) and "**ALL ALLIANCE"** (by German Barbosa). (*Id*., p. 18, ID 765).  Exhibit B to the "Statement of Work" document pertains to "CONFIDENTIALITY AND SECURITY REQUIREMENTS" and is replete with references to "**Hertz**" and Hertz's interrelationship with All Alliance.  As is the case with all the above-described documents, "Simply Wheelz, LLC" is not even mentioned, other than, *pro forma*, in the preamble to the various documents, yet "**Hertz**" is recited *ad nauseum*. (*Id*,. pp. 19-20, ID 766 & ID 767).  On page 23, ID 770, of Defendants' Exhibit 22, there is an "Indemnification" provision stating that Vendor (All Alliance) "shall indemnify and hold **Hertz** [not Simply Wheelz] harmless…etc."  On page 24, ID 771, is a "CERTIFICATE OF LIABILITYINSURANCE," indicating All Alliance as the insured and, somehow not surprisingly, indicating the "Certificate Holder" to be, "**The Hertz Corporation**." (See also p. 25, ID 773).  Another document, entitled, "Statement of Work – West Palm Beach," "effective 9/14/12," again purports to be between "Simply Wheelz, LLC dba Advantage Rent-A-Car ('Advantage')" and "All Alliance USA."  Yet it is written on letterhead conspicuously bearing the "**HERTZ**" logo. (Doc. 82, p. 31, ID 778).

Naturally, a question arises as to why Defendants would even be attaching the foregoing documents, given their aforementioned self-righteous accusation; to wit, that Plaintiffs' allegations of Hertz doing business as Advantage Rent A Car were knowingly false.  And, the Defendants submission of the documents in Exhibit 22 is particularly perplexing given the categorical representation to the Court that "at no time were any of The Hertz Defendants doing

business in Florida as Advantage Rent A Car." (Doc. 81 at 3) (emphasis supplied).  Perhaps

Plaintiffs' adversaries do, indeed, possess some expertise when it comes to knowing falsehoods,

after all.  Yet, the question remains unanswered as to why Hertz has not disclosed or submitted

to the Court any agreement between All Alliance and Advantage Rent A Car pertaining to the Ft.

Myers location.  The content of such an agreement(s) would be bound to be interesting.  Could it

be that there was simply the proverbial "gentlemen's agreement" with All Alliance,

notwithstanding the voluminous and excruciatingly detailed provisions in, and attachments to,

contracts pertaining to other locations in Florida?  Is it plausible that such a contract simply did

not exist?  The record shows otherwise.  According to Sonia Jimenez, the All Alliance supervisor

in charge of the subject Ft. Myers Advantage location, All Alliance did, in fact, have a contract

for the provision of its services at the Ft. Myers Advantage location. (Jimenez Dep. 22:10-18).

The Hertz Advantage manager at the location, Peter Della Luna, corroborates this.  He too

remembered seeing a contract between Hertz Advantage and All Alliance covering the subject

location, and he discussed this contract with Trey Vassar. (Luna Dep. 61- 63:1-10).   What

happened to that contract?  Did it meet with foul play?  We may never know.  But what we do

know, from Exhibit 22 (Doc. 82), standing alone, is that (a) Hertz was doing significant business

as Advantage in Florida with All Alliance; (b) Hertz openly and notoriously appears as the major

player on, and signatory to, contracts that were nominally between All Alliance and Simply

Wheelz; and (c) Hertz exercised pervasive control over All Alliance and its workers at

Advantage Rent A Car airport locations throughout the State of Florida.

     11.    Finally, Defendants' assertion that "[t]he dispute over whether the Plaintiffs

resigned or were terminated is not a material factual dispute that bars summary judgment," is

patently frivolous. (Doc. 81, p. 2).  Defendant's eleventh hour contention in this case is that, in

lieu of being terminated, as Plaintiffs contend, and as All Alliance's attorney formally

represented in writing to EEOC investigators, what actually happened was that all six Plaintiffs

inexplicably decided, *en masse*, to simultaneously quit their jobs and abandon their livelihoods.

It is hard to imagine a more material factual dispute bearing directly on the Court's

determination as to the pending motion, then the dispute as to how and why Plaintiffs'

employment was severed.  It is Plaintiff's position (albeit a disputed issue) that they were not

only terminated, but terminated on the basis of their Black race, in violation of 42 U.S.C. §1981,

and were replaced by Hispanic workers who were, *ipso facto*, outside the protected class.

## II.   ARGUMENT

### A.   Standards Governing Motion for Summary Judgment

Summary judgment is appropriate only where there are no genuine issues of material fact

and the movant is entitled to judgment as a matter of law. *Chapman v. AI Transp*., 229 F.3d

1012, 1023 (11th Cir.2000) (en banc).   "[T]he evidence of the non-movant is to be believed."

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  The Court should resolve all

reasonable doubts about the facts in favor of the non-movant. *Browning v. Peyton*, 918 F.2d

1516, 1520 (11th Cir.1990), and draw all justifiable inferences in his favor.  *Everett v. Napper*,

833 F.2d 1507, 1510 (11th Cir.1987).  If more than one inference could be reasonably construed

from the facts, and that inference introduces a genuine issue of material fact, summary judgment

is not justified. *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 996 (11th Cir.1990).

"The burden is on the moving party to show that there is not the slightest doubt as to the facts

and that only the legal conclusion remains to be resolved." *Marshall v. Kimberly-Clark Corp*.,

625 F.2d 1300, 1302 (5th Cir.1980).[2]

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit
adopted as binding precedent all decisions of the former Fifth Circuit prior to October 1, 1981.

**B.    There Are Disputed Issues of Material Fact in Connection with Plaintiffs' Section 1981 Claim of Race Discrimination**

42 U.S.C. § 1981("section 1981") provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens…

42 U.S.C. §1981(b) provides: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  At will employees are deemed to have contractual relationships with the employer for purposes of §1981, and fall within its protections. *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Bishop v. Avera*, 177 F.3d 1233, 1236 n.6 (11th Cir.1999).

Claims of race discrimination under §1981 are analyzed in the same manner as claims under Title VII. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir.2000). To state a prima facie case of race discrimination under §1981, a plaintiff may present direct evidence of intentional discrimination, or circumstantial evidence that creates an inference of discrimination. *Alvarez v. Royal Atlantic Developers, Inc*., 610 F.3d 1253, 1264 (11th Cir.2010).

When the plaintiff relies on circumstantial evidence to establish a claim under Title VII or section 1981, the court will test the sufficiency of the claim by applying the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Chapman*, 229 F.3d at 1024.

A plaintiff establishes a prima facie case of discrimination by showing that he (1) was a member of a protected class; (2) was qualified for the job; (3) suffered an adverse action; and (4) either was replaced by someone outside his protected class or was treated less favorably than a

similarly-situated individual outside his protected class. *Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir.2003).

> **1.  There is sufficient record evidence to raise a disputed issue of material fact as to whether the Hertz d/b/a Advantage Defendants committed unlawful race discrimination against Plaintiffs in violation of section 1981**

(a)  <u>There is substantial record evidence showing that Hertz was a joint employer</u>

Courts considering §1981 claims "have adopted the liberal rules used in National Labor Relations Act [NLRA] cases to determine whether two or more separate business entities are so related as to be "joint employers…" *Greason v. Southeastern R.R*, 650 F.Supp. 1, 3-4 (N.D.Ga.1986); *Perrin v. Florida Power & Light Co*., 35 Fair Empl.Prac.Cas. (BNA) 117 (S.D.Fla.1984).  A joint employment exists where "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Virgo*, 30 F.3d at 1360.  "Thus the joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment." *Id*.  "The joint employer concept is not based on the integration of two companies but instead looks to the control two separate companies exert over the same employees. *N.L.R.B. v. Western Temporary Services, Inc*., 821 F.2d 1258, 1266 (7th Cir.1987). "Evidence that one entity controlled, managed, supervised, or otherwise affected the labor practices and policies of the nominal employer entity suffices to establish that the two entities were joint employers of the Plaintiffs." *Greason*, 650 F. Supp. at 4-5.  The joint employer doctrine construes the term "employer" functionally to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an employee's terms, conditions, or privileges of employment. *EEOC v. Sage Realty Corp*., 507 F. Supp. 599,

611 (S.D.N.Y.1981).  "A joint employer relationship may be found to exist where there is sufficient evidence that one company had immediate control over the other company's employees." *Barbosa v. Continuum Health Partners, Inc.*, 716 F.Supp.2d 210, 216 (S.D.N.Y.2010).  Two defendants are joint employers "where [the] two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees." *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir.1999).

The United States Supreme Court in *Boire*, stated the issue as follows: Who was the "employer" of certain workers who sought union representation?  The Union filed a petition with the NLRB, requesting a representation election among the porters, janitors and maids working at four Florida Greyhound bus terminals, and designating the "employer" as both Greyhound and Floors, Inc.  Floors provided cleaning and maintenance services to companies in Florida, and had contracted with Greyhound to provide such services at the subject Greyhound bus terminals. The Union contended that Greyhound was at least a "joint employer" with Floors of the employees, while Greyhound and Floors claimed that Floors was the sole employer. *Boire*, 376 U.S. 474-475.  The NLRB found that while Floors hired, paid, disciplined, transferred, promoted and discharged the employees, Greyhound took part in setting up work schedules, in determining the number of employees required to meet those schedules, and in directing the work of the employees in question.  The Board also found that, in at least one instance, Greyhound had prompted the discharge of an employee whom it regarded as unsatisfactory.  On this basis, the NLRB concluded that Greyhound and Floors were joint employers, because they exercised common control over the employees. 376 U.S. at 480-481.  The Supreme Court affirmed, noting that the question of whether Greyhound possessed sufficient indicia of control to be an

"employer" is a factual issue, and rejected the argument that Greyhound could not conceivably be an employer of employees who were hired, paid, transferred and promoted by an independent contractor (Floors).  The Court noted that whether Greyhound possessed sufficient control over the employees' work to qualify as a joint employer with Floors is a question unaffected by any determination as to Floors' status as an independent contractor. *Id*. at 481.

As Plaintiffs will show, in light of the foregoing authority, there is sufficient record evidence to raise a material issue of fact as to whether Hertz, along with All Alliance, was a joint employer of Plaintiffs.  There is clearly an issue of disputed fact regarding whether Plaintiffs were terminated or whether they voluntarily resigned.  Thus, if the Court believes there is sufficient evidence to raise an issue of material fact as to whether Hertz was a joint employer of Plaintiffs, there would, in turn, be an issue of material fact as to whether Hertz took adverse employment action against Plaintiffs.  As noted, an adverse employment action is an element of a prima facie case for race discrimination based upon circumstantial evidence.  Plaintiffs will more specifically discuss the prima facie case issue *infra*.  Meanwhile, the evidence showing that Hertz "possessed sufficient control over the work of the [Plaintiffs] to qualify as a joint employer" (*Boire*, 376 U.S at 481), is overwhelming, and includes the following:

Peter Della Luna worked as the manager for the subject Advantage Rent A Car location, at the Holiday Inn two miles from the Ft. Myers airport, from September 2009, until he resigned around December 20, 2011. (Della Luna Dep. 6-7; 9:21-23; 48-49) (hereinafter "Luna Dep.") (Jerome Dep. of 3/14/2013, 50:16:25; 51).  Advantage Rent A Car was the "discount provider for Hertz," and was "owned by Hertz." (Luna Dep. 6:6-11; 15:5-11).  Della Luna ran the day-to-day operations of a 300 car rental fleet; the entire fleet was owned, insured and supplied by "Hertz." (Luna Dep. 9:21-25; 17:8-25; 18:1-3; Vassar Dep. 32:22-25; 33; 35-36).  Della Luna received his

paychecks directly from "The Hertz Corporation." (Luna Dep. 21:13-16).   He managed ten people, including Plaintiffs Jerome, Raphael, Delice, as well as a "Jean" and a "Joseph." (*Id*. at 10; 40:16-25; 41:1-2; 44-45).[3]   When cars were needed, Della Luna would call "Hertz at the airport," would obtain the approval of the Hertz area manager, and documentation would be provided to Hertz. (*Id*. at 18-19).   Della Luna would send Plaintiff Jerome and his co-workers to "Hertz" at the Ft. Myers Airport to procure cars for the subject Advantage location. (Jerome Dep. of 3/14/13, 151) (hereinafter "Jer. Dep. I") (Jerome Dep. of 10/22/13, 18:1-5) (hereinafter "Jer. Dep. II").   The cars that were rented out at the subject Advantage location were cleaned by Plaintiffs both on site at the subject Ft. Myers Advantage location and at various Hertz locations; Hertz gas was used to fill up the cars. (Jer. Dep. I 151; 154:23-25; Jer. Dep. II 13-14).   Jerome was hired by Della Luna, and "Andre," an All Alliance employee, who was the leader worker at the subject location. (Jer. Dep. I 12:17-21; 13:1-9; 148:12-13; Jer. Dep. II 9-11).   Jerome's hiring was approved by "Crystal," a representative of All Alliance. (Jer. Dep. II 9-10; 12).   Crystal would call Jerome in regard to paycheck and time sheet issues, and directed that time sheets be sent to her. (*Id*. at 30:22-25; 31:1-2). The checks Jerome and the others received were issued by two leasing companies. (*Id*. at 32).   Jerome communicated with both Crystal and Della Luna in regard to pay check issues, such as when checks would fail to clear. (*Id*. at 33; Luna Dep. 30:17-20).   Both Della Luna and Crystal were involved in the hiring process and decisions with respect to new applicants for employment at the subject location. (Jer. Dep. II 35-36).   Della Luna trained Jerome and the other Plaintiffs how to drive the courtesy bus, and instructed them regarding the picking up of people from the airport. (*Id*. at 18:1-5).   Della Luna directed Jerome and his crew as to how many workers he needed to clean or drive vehicles, and also did the scheduling of workers. (*Id*. at 25).   Della Luna signed as "manager/supervisor" the time sheets

---

[3] Note that "Joseph Julner Honore "and "Udovic Jean-Francoise" are also Plaintiffs herein.

that All Alliance used for employees. (Luna Dep. 37:1-12 & Exh. 3 thereto).   Della Luna

confirmed that All Alliance workers wore shirts that bore the name, "Advantage." (Id. at 85:16-

25; 86:1-9).   Hertz Advantage and All Alliance jointly trained All Alliance employees who

worked at the subject Ft. Myers Advantage location based on "directives from Hertz." (*Id*. at

77:13-25; 78:1-7).   On various occasions, Della Luna would ask Jerome to come in early or stay

late, and Jerome always complied with those directives. (*Id*. at 35-38).   Della Luna actually had

the power to fire employees hired by All Alliance who worked at the subject Advantage location,

and/or to direct All Alliance to terminate such employees, and at times he exercised that power.

(*Id*. at 63-65; 76-77).   At deposition, Plaintiff's counsel handed Della Luna a document

purporting to be a document submitted by All Alliance to the EEOC, and which was marked as

Plaintiff's Exhibit 2, and Della Luna read aloud from it, as follows:

> The number of All Alliance employees per lot is determined by the Hertz Advantage
> manager at each location.   In the case of Fort Myers on a daily basis in charge of that
> location, a Hertz Advantage manager was always on site.   That manager was responsible
> for directing All Alliance regarding what employees would be required, the total number
> as well as directing their daily work assignments.   Just prior to the Plaintiffs' termination
> at the Fort Myers location, the Hertz Advantage manager at that location was changed by
> Hertz management."

Della Luna then confirmed that what he had read was a true statement. (Luna Dep. 32; 33:1-4).

Della Luna reported to Trey Vassar and Defendant Terry Gibson. (*Id*. at 7-8; 24; 49:19-

25; 52:22-25).   Vassar, the Eastern Regional General Manager for Advantage Rent A Car,

testified that, in 2009, "Hertz" acquired Advantage through bankruptcy, and he no idea who or

what Simply Wheelz, LLC is. (Vassar Dep. 6:11-19; 10:11-20; 13:1-11).   He testified that he

knew Advantage was affiliated with Hertz, and that Hertz owned the Advantage "brand." (*Id*. at

14:25; 15:1-15).   Vassar interviewed and hired Terry Gibson originally for the job of City

Manager of Tampa for Advantage Rent A Car. (*Id*. at 17:17-25; 18:1-7).   Vassar confirmed that

Della Luna worked as location manager of the subject Advantage location, that Della Luna had an office in the maintenance facility at "Hertz" and that All Alliance USA was a subvendor for "Hertz Rental Car Corporation." (*Id*. at 40:20-22; 41; 45:16-25; 56:16-25; 57:1-4).

Sonia Jimenez was an All Alliance supervisor, of Hispanic ethnicity, responsible for supervising All Alliance employees at the subject Advantage location, including in February 2012. (Jimenez Dep. 6:3-5; 10:19-25; 11:1-3; 21:16-25; 22).  Jimenez reported to the principal of All Alliance, Mr. Barbosa. (*Id*. at 12:21-25; 13:1-2).  She testified that All Alliance was responsible for "repositioning Hertz Advantage Rental cars when the cars are returned by customers to Hertz Advantage various rental locations," including Ft. Myers. (*Id*. at 54:5-15; 55:1-10).  After Peter Della Luna resigned as manager, the number of All Alliance employees at the subject location was determined by Terry Gibson, who Jimenez knew to be a District Manager for Hertz Advantage. (*Id*. at 55-56; 58-59).  Gibson directed All Alliance regarding which and how many All Alliance employees would be required each day at the subject Advantage location. (*Id*. at 57-59; 69:17-22).  The Hertz Advantage manager would direct the daily work assignments of All Alliance employees. (*Id*. at 57:2-9).  Gibson would come to the subject Advantage location and he (a) would make assessments as to the performance of the All Alliance workers; (b) would have discussions with Jimenez as to the work performance of those workers; (c) would decide who should be performing which tasks; (d) would give orders as to the dress and appearance of All Alliance workers; and (e) voiced what issues he believed needed to be fixed. (*Id*. at 61-63; 68:1-4).  Jerome was Jimenez's "main contact," and Gibson also communicated directly with Jerome regarding All Alliance personnel issues at the location. (*Id*. at 68:16-25; 134-135).  Jimenez would ask Gibson's "permission" to find, interview and train people for various positions with All Alliance, for example, shuttle bus drivers and/or cleaners,

and Jimenez would first obtain from Gibson the "authorization" to do so. (*Id*. at 81-82). Jimenez did whatever she was told to do by Gibson/Hertz Advantage. (*Id*. at 211:1-3). Note that Defendants contend, "it is undisputed that Terry Gibson was employed only by Advantage, not The Hertz Defendants." (Doc. 81 at 9). That claim is untrue, as it is hotly disputed, at least as to The Hertz Corporation. Moreover, as explained in detail in paragraph 10 of the Introduction herein, Hertz was pervasively doing business as "Advantage." Hertz was calling all the shots, as evidenced by the substantive provisions contained in the agreements supposedly between Simply Wheelz, LLC and All Alliance. Hence, if Gibson was an employee of "Advantage," as Defendants assert, he was a *de facto* employee of Hertz and/or he was clearly under Hertz's complete dominion and control. At minimum, based on the evidence and reasonable inferences to be drawn therefrom, there is a genuine dispute of material fact as to this issue.

In light of the U.S. Supreme Court's decision in *Boire*, and Eleventh Circuit and other Federal authority cited herein, Hertz clearly exercised sufficient control over Plaintiffs such that Hertz was a joint employer of Plaintiffs along with All Alliance. At minimum, there is sufficient record evidence to raise a genuine issue of material fact as to whether Hertz was a joint employer of Plaintiffs along with All Alliance.[4]

    (b) <u>There is sufficient record evidence to establish a prima facie case of race discrimination on the part of Plaintiffs' joint employer, Hertz, or at least to raise genuine issues of material fact thereto</u>

Plaintiffs shall analyze, below, the four (4) elements of Plaintiffs' prima facie case:

(1) <u>Plaintiffs were members of a protected class</u>. It is undisputed that Plaintiffs were all members of the Black race. Thus, they were members of a protected class under section 1981.

(2) <u>Plaintiffs were qualified for the job</u>. Sonia  Jimenez testified that she had no problem with

---

[4] Similarly, it is clear that there is a disputed issue of material fact as to whether Hertz was doing business as Advantage or Advantage Rent A Car.

the work performance of the Plaintiffs, and that, in fact, they were all "fantastic."  (Jimenez Dep. 49:23-25; 50:1-2; 69:10-16; 104:24-25; 105:1-22).  Peter Della Luna testified that Jerome was a "great employee," and that the All Alliance Black Haitian-Americans who worked at the subject location were "very good."  He received no complaints from customers about any of the workers; and they showed up on time, and did their job. (*Id*. at 38:11-17; 46:25; 47:1-4; 48:1-15).

(3) <u>Plaintiffs suffered an adverse action</u>. According to Ms. Jimenez, she had no reason to terminate Plaintiffs, was not told by Terry Gibson to fire anyone, and did not terminate Plaintiffs; instead she claims that all six of the Plaintiffs simply decided on their own accord one day not to show up for work and never called her back for unknown reasons. (*Id*. at 64-65 68:5-15; 73:1-10; 75:1-14; 78-79; 84:9-17).  However, this testimony is controverted by both Plaintiffs and the formal response documents submitted to the EEOC by All Alliance's attorney, Mr. Matzuk. (See Matzuk Documents attached to Barden Declaration; see also Matzuk Dep. 19 through 40 & Exhibits 3-6 thereto).  Mr. Matzuk formally represented to the EEOC that Plaintiffs were terminated after the "Hertz manager" directed All Alliance to terminate and replace the Plaintiffs. (Matzuk Dep. 36-41).  As to her claim that the six Plaintiffs quit on their own accord, Jimenez testified that she never made any writing, personnel record or note of it, and that she sent no emails to anyone. (Jimenez Dep. 85:14-22).  Additionally, Plaintiffs have testified that they did not voluntarily resign, but were terminated from employment. (See Jer. Dep. I 51:16-17; Choute Dep. 3/15/13, 18:11-24; 22:7-25; 24; 26:20-25; 52-53; Raphael Dep. 10/22/13, 26:9-25; 31:15-18; Honore Dep. 10/22/13, 24:17-25; 25:1-4; Jean-Francoise Dep. 10/22/13, 20-24; Delice Dep. 10/22/13, 21:1-3).  Obviously, termination is the ultimate "adverse employment action," and there exists a genuine issue of material fact as to whether Plaintiffs were terminated.  As noted, for purposes of a motion for summary judgment, Plaintiff' evidence is to be believed,

*Anderson*, 477 U.S. at 255, and the Court should resolve all reasonable doubts about the facts in favor of the non-movant. *Browning*, 918 F.2d at 1520.

(4) <u>Plaintiffs were replaced by individuals outside the protected class or treated less favorably than a similarly-situated individual outside the protected class</u>.   In the wake of Plaintiffs' departure, Marta Garcia, who was of Hispanic ethnicity, was a new person that was trained for the position of "greeter" to replace Plaintiff Senopha Choute (Jimenez Dep. 71-73).   Hildaberto Laza, also of Hispanic ethnicity, was retained as a worker at the subject location.  (*Id*. at 65:9-20; 71:1-8).   The day after Plaintiffs were terminated, two other new workers of Hispanic ethnicity were put into place, making it a total of four (4) Hispanic workers working at the subject location as of February 26, 2012. (*Id*. at 76-77; 99).   In addition to Laza, who was retained after the six (6) Plaintiffs' severance from employment, the new-hires of Hispanic ethnicity were Marta Garcia, Juan Ramos, a Mr. Barbaro, a Mr. Castillo, and another Hispanic individual, Andreas Orios, who was brought in to replace Plaintiff Jerome as lead worker, totaling six (6) Hispanic workers in all at the subject location, who were either retained or newly hired after Plaintiffs' departure. (*Id*. at 99:8-25; 100:1-13; 103:23-25; 104:1-23).

## 2.      Hertz cannot rebut the presumption of unlawful race discrimination

The plaintiff's successful assertion of a prima facie case creates a rebuttable presumption that the employer committed unlawful discrimination.  *E.E.O.C. v. Joe's Stone Crabs, Inc*., 296 F.3d 1265, 1272 (11th Cir.2002).   The burden then shifts to the defendant to produce evidence that the adverse employment action was based upon a legitimate, non-discriminatory reason. *Id*. If the presumption is unrebutted, the court must enter judgment for the plaintiff because no issue

of fact remains in the case. *Id*. at 1273.[5]  The problem for Hertz, in steadfastly maintaining that

Plaintiffs were not terminated at all, is that it has painted itself into a logical corner, in essence,

making it impossible to rebut the presumption of race discrimination.  Since Hertz denies that

any adverse action was even taken against Plaintiffs, it inevitably follows that Hertz cannot

produce (and has not produced) evidence of a legitimate, non-discriminatory reason for the

adverse employment action.  Thus, at the very least, there is a genuine issue of material fact as to

whether Plaintiffs were unlawfully terminated by Hertz on the basis of race.

       **C.**    **There is a Material Issue of Fact as to Whether Defendant Gibson is Liable under §1981 Based on Direct Evidence of Race Discrimination**

Parties other than the plaintiff's employer can be liable under §1981. *WRMA*

*Broadcasting Co., Inc. v. Hawthorne*, 365 F. Supp. 577, 582 (D.Ala.1973) (r'vsd on other

grounds) (wording of §1981 does not say "employers may not deny on account of race the right

to make contracts," but instead says, "All persons ... shall have the same right ... to make and

enforce contracts").  An individual can be held liable under §1981 if he authorized, directed or

participated in the discriminatory conduct. *Johnson v. Chapel Hill Indep. Sch. Dist*., 853 F.2d

375, 381 (5th Cir.1988); *Al– Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d Cir.1986).

Direct evidence of discrimination is evidence which, if believed, would prove the existence of a

fact without inference or presumption. *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th

Cir.1989).   If a plaintiff produces direct evidence of discrimination, he has, without more,

established a prima facie case. *Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321,

1323 and n.11 (11th Cir. 1998).

---

[5] In cases where the defendant meets this burden to produce evidence that the adverse employment action was based upon a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination. *Alvarez*, 610 F.3d at 1264.

Here the issue centers around whether the testimony of Plaintiffs Jerome and Choute as to why they were being fired is admissible. (Doc. 81 at 5). To determine this issue, the Court should first look to the statement(s) of the original declarant, Defendant Gibson, to Ms. Jimenez, that he did not like Black people and wanted Plaintiffs replaced. (Jer. Dep. I, 17-19; 46-47; 51:16-17; 65-66; 110:24-25; 112; 114-117; 125; 148:14-15; Choute Dep. of 3/15/13, 17:13-21; 18; 22:7-25; 24; 26:20-25; 51-53). FRE 803(3) "authorizes the admission of a statement of the declarant's [Gibson's] then existing state of mind, emotion…such as intent, plan, motive, design, mental feeling…" *U.S. v. Scrima*, 819 F.2d 996, 1000 (11th Cir.1987) (internal quotation omitted). Gibson's statement clearly falls within the ambit of FRE 803(3). Second, Jimenez's statement to Plaintiffs that they were being fired because Gibson did not like Black people, is not hearsay in the first instance because the statement has evidentiary value independent of its truth or falsity; i.e., Plaintiffs need not prove that Gibson actually did not like Black people, but only that they were being terminated based upon their race. However, even assuming, *arguendo*, that Jimenez's statement to Plaintiffs constitutes hearsay, it would be nonetheless admissible under FRE 803(3) as a statement of her then-existing state of mind, specifically, a statement of her motive and/or intention as to why she was terminating Plaintiffs. Accordingly, there is direct, admissible evidence of race discrimination on the part of Gibson sufficient to raise a genuine issue of material fact as to his individual liability under §1981. As such, the Court should also deny any summary judgment in his favor.

## II.    CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court enter an Order: (1) Denying the Motion for Summary Judgment asserted on behalf of Defendants The Hertz Corporation and Terry Gibson in connection with Plaintiffs' claim under §1981; (2)

Denying, as moot, the Motion for Summary Judgment asserted on behalf all Defendants in connection with Plaintiffs withdrawn claim for tortious interference; (3) Denying, as moot, the Motion for Summary Judgment insofar as it has been asserted on behalf of Hertz Global Holdings, Inc.; (4) Granting such other or further relief that the Court may deem proper and just.

Respectfully submitted,

By: /s/Dennis L. Webb
DENNIS L. WEBB, ESQUIRE
Florida Bar No. 165956
dennis@swflalawyers.com
WEBB & SCARMOZZINO, P.A.
2121 West First Street, Second Floor
Fort Myers, FL   33901
(239) 334-1600 – Telephone
(239) 334-7979 – Facsimile
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of March, 2014 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

**SERVICE LIST**

**JEROME, et.al. v. THE HERTZ CORPORATION, et.al.**
**CASE NO. 2:12-cv-610-FtM-99DNF**

John W. Campbell, Esq., Fla. Bar No. 198021
jcampbell@constangy.com
Hannah Choi Esq.
hchoi@constangy.com

26

CONSTANGY, BROOKS & SMITH, LLP
100 North Tampa Street, Suite 3350
Post Office Box 1840
Tampa, Florida 33601-1840
Served by CM/ECF transmission

/s/Dennis L. Webb_____
DENNIS L. WEBB, ESQUIRE
Florida Bar No. 165956
Attorney for Plaintiff
WEBB & SCARMOZZINO, P.A.
2121 West First Street, Second Floor
Fort Myers, FL   33901
(239) 334-1600 – Telephone
(239) 334-7979 – Facsimile
dennis@swflalawyers.com
laurie@swflalawyers.com