UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GESNER JEROME, MOISE DELICE,
JOSEPH JULNER HONORE, UDOVIC
JEAN-FRANCOISE, MARC D.
RAPHAEL and SENOPHA CHOUTE,

             Plaintiffs,

v.                                  Case No:  2:12-cv-610-FtM-38DNF

THE HERTZ CORPORATION,
HERTZ GLOBAL HOLDINGS, INC.,
SIMPLY WHEELZ, LLC and TERRY
GIBSON,

             Defendants.

_____/

### ORDER[1]

This matter comes before the Court on Motion for Summary Judgment of Defendants The Hertz Corporation, Hertz Global Holdings, Inc., and Terry Gibson (Doc. #81; see also Doc. #82) filed on February 3, 2014. Plaintiffs filed a memorandum of law in opposition (Doc. #92) on March 7, 2014. This matter is now ripe for review.

### Facts

Plaintiffs Gesner Jerome, Moise Delice, Joseph Julner Honore, Udovic Jean-Francoise, Marc D. Raphael, and Senopha Choute are all Black individuals of Haitian descent and at one time were employees of All Alliance USA, Inc. (hereinafter "All

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Alliance"). All Alliance contracted to work as a vendor for Simply Wheelz, LLC,[2] a company doing business as Advantage Rent a Car (hereinafter "Advantage"),[3] at the Fort Myers, Florida off-airport facility of Advantage. (See Doc. #82-21, at 3 (Trey Vassar explaining that All Alliance was an outsource provider)). Defendant Terry Gibson was a supervisor for Advantage in Tampa, Florida. Defendant Gibson on occasion worked in Fort Myers, Florida as well. (Doc. #82-1, at ¶¶2, 22; Doc. #92-4, at 8). Simply Wheelz, a subsidiary of Hertz, purchased the assets of Advantage out of Bankruptcy in 2009. (Doc. #82-2, at ¶4). The Second Amended Complaint alleges Advantage in essence was a fictitious name under Hertz. (Doc. #64, at ¶8). The Second Amended Complaint also alleges All Alliance, Simply Wheelz (Advantage), and Hertz were all joint employers of Plaintiffs. (Doc. #64, at ¶24). Defendants deny these allegations. (Doc. #64; Doc. #82-2, at ¶2).

While employed by All Alliance, Plaintiffs performed various duties such as cleaning rental cars, transporting rental cars, driving the airport courtesy bus, and providing some customer service. (See e.g., Doc. #82-11, at 3, 5; Doc. #82-13, at 3; Doc. #92-6, at 37; Doc. #92-7, at 25-26). These job duties were pursuant to a contract between All Alliance and Advantage.[4] (Doc. #92-4, at 85). Plaintiffs wore Advantage shirts when performing their work duties. (See e.g., Doc. #82-14, at 3; Doc. #82-15, at 9; Doc. #92-6,

---

[2] This matter is stayed only with regard to Defendant Simply Wheelz, LLC due to its Suggestion of Bankruptcy. (See Doc. #66; Doc. #80).

[3] In this order, the Court references to Simply Wheelz and Advantage interchangeably equates to the same company. This is because Simply Wheelz, a subsidiary of Hertz, was a company doing business as Advantage Rent a Car. (See Doc. #82-3, at ¶1).

[4] Defendants filed a Master Goods and Service Agreement which is purported to be a contract between Simply Wheelz, LLC d/b/a Advantage and All Alliance. (Doc. #82-22). The Court, however, notes that the properties involved in this contract are Fort Lauderdale, Miami, and Orlando rather than Fort Myers. The Court, therefore, finds this Master Goods and Service Agreement is not relevant to this summary judgment motion because this case only involves work performed in Fort Myers.

at 23). Occasionally, Plaintiffs transported Hertz cars as well. (Doc. #82-14, at 3; Doc. #82-15, at 5). These occasions occurred when Advantage had an influx in its need of cars for patrons and accordingly Advantage would formally request additional cars from Hertz. (Doc. #92-4, at 19-20). Plaintiffs reported to work at an Advantage worksite located at a Holiday Inn at the start of their work day. (Doc. #92-6; Doc. #92-7 at 11). Due to bus shuttle and car retrieving duties, Plaintiffs' jobs required travel outside of this Holiday Inn location as well. (See e.g., Doc. #92-7, at 22, 24).

Plaintiff Jerome testified that he was hired by Peter Luna, from Advantage, and a man named Andre, from All Alliance. (Doc. #92-6, at 13-14). Through All Alliance, Plaintiff Jerome helped hire the other five Plaintiffs at different times; spanning over a two year period. (Doc. #82-15, at 11, 14; Doc. #92-7, at 37; Doc. #92-8, at 2; Doc. #92-10, at 35). Sonia Jimenez, an All Alliance employee, supervised all Plaintiffs. (Doc. #82-15, at 6). Jimenez, however, only communicated work related messages to Plaintiff Jerome, and in turn, Plaintiff Jerome communicated to the other Plaintiffs. (Doc. #82-17, at 7; Doc. #92-4, at 78).  While working for All Alliance, Plaintiff Jerome served as the leader of the five other Plaintiffs. (See e.g., Doc. #82-11, at 5; see also Doc. #92-4, at 28). Plaintiff Raphael served as the leader to the other Plaintiffs on the days Plaintiff Jerome did not work. (Doc. #82-6, at 5; Doc. #82-18, at 2; Doc. #92-4, at 41). In addition, Plaintiff Jerome supervised the other Plaintiffs. (Doc. #92-2, at 18).

Plaintiffs' paychecks did not come from Hertz or Advantage. (See e.g., Doc. #82-16, at 3; Doc. #92-6, at 15-16). Plaintiffs' paychecks came from All Alliance and a company called Convergence. (See e.g., Doc. #92-10, at 7). When there were issues with

their paychecks, Plaintiffs contacted All Alliance employees to rectify the issues. (See e.g., Doc. #92-10, at 12).

Prior to August 2013, Defendant Terry Gibson managed the operations of Advantage in both Fort Myers and Tampa, Florida. (Doc. #82-1, at ¶2). Defendant Gibson traveled to Fort Myers for his job about four to five times. (Doc. #82-1, at ¶22; see also Doc. #82-10, at 59). Defendant Gibson declared in this capacity he did not control All Alliance functions and did not know the names of All Alliance's employees. (Doc. #82-1, at ¶¶3-20). Nonetheless, Defendant Gibson requested that the All Alliance employees dress neatly and be able to speak English. (Doc. #82-1, at ¶21; see also Doc. #82-10, at 6; Doc. #92-5, at 19). Defendant Gibson made this request to Jimenez. (Doc. #82-1, at ¶21; see also Doc. #92-5, at 21). At one time he evaluated that the clothing of some All Alliance employees was unsuitable for providing shuttle bus services to customers. (Doc. #82-1, at ¶22). Defendant Gibson admitted, even if a shuttle bus driver was not an Advantage employee, the driver's appearance could reflect badly on Advantage as a company. (Doc. #82-1, at ¶22). Defendant Gibson wanted Advantage customers to be pleased with the service provided to them. (Doc. #82-1, at ¶22).

Defendant Gibson asked Plaintiff Jerome to fill his car with gas after he drove from Tampa to Fort Myers for work. (Doc. #92-6, at 26). Defendant Gibson also requested Plaintiffs to retrieve Hertz cars and wash them. (Doc. #92-6, at 27-28). For the most part, however, Defendant Gibson only spoke with Jimenez rather than to Plaintiffs directly. (Doc. #92-6, at 33). The record reveals there may have been a day where Defendant Gibson was upset with Plaintiff Jerome for taking a relatively long time, approximately thirty minutes, to retrieve and wash a car for a customer. (Doc. #92-6, at 28-33).

Bradford Simmons, a human resource business partner for Hertz, is responsible for personnel and human resources matters in the southeastern United States and the Caribbean. (Doc. #82-3, at ¶1). Simmons declared Hertz did not share or intermingle employees with Simply Wheelz (Advantage). (Doc. #82-3, at ¶¶2-3). Simmons labeled Simply Wheelz (Advantage) as an independent contractor and asserted Hertz and Simply Wheelz (Advantage) did not have involvement or control of All Alliance's daily functions. (Doc. #82-3, at ¶¶4-23). Further, Simmons asserted Hertz did not interfere with Plaintiffs' employment with All Alliance. (Doc. #82-3, at ¶¶23-26). Robert Vassar, the Regional Manager of the Eastern Region for Simply Wheelz (Advantage), gave a similar substantive declaration but with regard to Simply Wheelz (Advantage) and Plaintiffs. (See generally Doc. #82-4).

Peter Luna worked for Advantage in Fort Myers. (Doc. #92-4, at 10). Luna specifically worked at a Holiday Inn location rather than at the Fort Myers Airport. (See generally Doc. #92-4). Luna on occasion worked with Plaintiff Jerome because the All Alliance Plaintiffs cleaned the Advantage cars and transported customers from the Fort Myers Airport to the Holiday Inn location. (See generally Doc. #92-4, at 79-80). Luna, through Advantage, determined the number of All Alliance employees Advantage needed to work each day at the Holiday Inn location. (Doc. #92-4, at 33-34; Doc. #92-5, at 18; see also Doc. #92-8, at 4-5). Luna, however, did not determine who specifically worked each day. (Doc. #92-7, at 31). Luna advised Plaintiffs to arrive at work by 7:30 a.m. (Doc. #92-7, at 45). All Alliance, however, made the schedule for Plaintiffs. (See Doc. #92-7, at 46). Luna gave cleaning supplies and general instructions to Plaintiffs with regard to their car cleaning duties; however, Defendant Gibson did not provide such cleaning supplies

to Plaintiffs. (See e.g., Doc. #92-10, at 15-16). Luna did not supervise Plaintiffs actually cleaning the cars. (Doc. #92-10, at 18). Luna did not have the authority to terminate All Alliance employees, however, if a driver was unable to speak English, Luna could advise All Alliance of this issue in order to obtain a different driver that spoke English fluently. (Doc. #92-4, at 47, 68, 77). Luna quit his job with Advantage for personal reasons in December of 2010. (Doc. #92-4, at 49; Doc. #92-5, at 59).

With the exception of Plaintiff Jean-Francoise and Plaintiff Jerome,[5] Plaintiffs did not believe they worked for Hertz. (See e.g., Doc. #82-6, at 6; Doc. #82-13, at 8). Plaintiffs thought they worked for All Alliance or Advantage only. (Doc. #82-6, at 7; Doc. #82-7, at 3; Doc. #82-11, at 9; Doc. #82-12, at 4-5; Doc. #82-13, at 8; Doc. #82-18, at 6). Plaintiffs also admit no one other than Plaintiffs Jerome and Raphael gave the other Plaintiffs orders or instructions.[6] (Doc. #82-6, at 5; Doc. #82-7, at 3; Doc. #82-13, at 5).

On February 25, 2012, Plaintiffs Choute and Jimenez got into an argument. (Doc. #92-5, at 53; see also Doc. #92-7, at 15-16). Jimenez claims Plaintiff Choute inappropriately yelled at her. (Doc. #92-5, at 53). Despite this, Jimenez alleges she did not terminate Plaintiff Choute or any of the other Plaintiffs. (Doc. #92-5, at 54). Jimenez, however, requested Plaintiff Jerome to take Plaintiff Choute home for the day and then for Plaintiff Jerome to return to work. (Doc. #92-5, at 54-55). Jimenez did not communicate this incident to Advantage or Hertz. (Doc. #92-5, at 56).

---

[5] Plaintiff Jean-Francoise states he worked for All Alliance, Advantage, and Hertz because he filled out an application with All Alliance, wore an Advantage shirt, but drove Hertz cars, and did other functions for Hertz rather than just All Alliance. (Doc. #82-14, at 3). Plaintiff Jerome states he believed he worked for Hertz because while wearing an Advantage shirt on occasion he drove Hertz cars that were insured by Hertz. (Doc. #92-10, at 8-9).
[6] As stated previously, Jerome received instructions from Jimenez of All Alliance and relayed such work messages to the other Plaintiffs.

Nonetheless, on February 25, 2012, Plaintiffs' jobs with All Alliance ended. Plaintiffs assert they were fired because of their race. (Doc. #92-6, at 33; see also Doc. #92-7, at 16). Specifically, Plaintiffs allege Jimenez told Plaintiff Jerome they were all fired because Defendant Gibson does not like Black people, does not want to work with Black people, and wanted to replace Plaintiffs with those of Hispanic descent. (Doc. #92-6, 19-20, 33). The record is unclear as to when this alleged remark was made to Jimenez. (Doc. #92-6, at 20). Whereas, All Alliance, through Jimenez, asserts Plaintiffs were not terminated but instead abandoned their jobs. (Doc. #82-17, at 3-4, 6; Doc. #92-5, at 13-14). Jimenez testified Defendant Gibson never told her to terminate Plaintiffs. (Doc. #92-5, at 51, 56, 58). Jimenez also denies Defendant Gibson telling her that he did not like Black people. (Doc. #92-5, at 58). Further, Jimenez testified that if the Plaintiffs did not abandon their jobs then Plaintiffs would still have had jobs with All Alliance. (Doc. #82-17, at 4).

Plaintiffs also admit they never heard Defendant Gibson make a comment that he did not like Black people, or something of the like. (Doc. #82-6, at 4; Doc. #82-7, at 5; see also Doc. #82-15, at 7-8 (Jerome indicates he customarily did not talk to Gibson even when he saw Gibson because Gibson was not his boss);[7] Doc. #92-4, at 72; Doc. #92-6, at 47). Plaintiffs, such as Plaintiff Honore and Plaintiff Jean-Francois, only heard this alleged comment from Plaintiff Jerome who allegedly was told this from Jimenez. (See e.g., Doc. #82-11, at 10; Doc. #82-13, at 10; Doc. #82-15, at 17; Doc. #82-18, at 5). Plaintiffs, such as Plaintiff Jerome, do not know when this alleged statement was made.

---

[7] Plaintiff Jerome indicates that Defendant Gibson did not talk to him, and this may have been because he was Black. Plaintiff Jerome, however, admits this is merely a speculation. (Doc. #92-7, at 19). Plaintiff Jerome also states that he did not initiate conversations with Defendant Gibson because Defendant Gibson was not his boss but instead Jimenez was his boss. (Doc. #92-7, at 22).

(Doc. #92-6, at 20). Meanwhile, Jimenez in her deposition stated she never made a comment about Defendant Gibson and whether he disliked Blacks to Plaintiffs. (Doc. #82-17, at 10). Moreover, Plaintiff Delice admitted he does not believe he and the other Plaintiffs were fired because of race discrimination. (Doc. #82-7, at 5). Plaintiff Jean-Francois, however, believes Plaintiffs were discriminated against based on their race. (Doc. #82-13, at 12).

Plaintiff Jerome testified Jimenez forewarned him in early February 2012 that Plaintiffs were going to be replaced. (Doc. #92-7, at 2-3, 20). This later came true, as Plaintiffs were eventually replaced by individuals of Hispanic descent. (Doc. #82-13, at 9, 12; Doc. #82-15, at 16; Doc. #92-5, at 22). Sometime after February 25, 2012, the contract between All Alliance and Simply Wheelz ended and All Alliance went out of business. (Doc. #82-5, at 3; Doc. #92-4, at 84).

Plaintiffs have brought a two count Complaint against Defendants. Count I is an unlawful discrimination claim pursuant to 42 U.S.C. § 1981. Count II is a claim for tortious interference with an advantageous business relationship. Defendants move for summary judgment and Plaintiffs oppose.

**Standard**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 U.S. 2505, 91 L. Ed. 2d 202 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999). Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. Celotex, 477 U.S. at 322-23. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

### Discussion

As a preliminary matter, Plaintiffs have independently elected not to pursue a claim or remedy for tortious interference with a business relationship. Count II is therefore due

to be dismissed. In addition, Plaintiffs have indicated they no longer seek relief from Hertz Global Holdings, Inc. Therefore, Defendant Hertz Global Holdings, Inc. is due to be terminated from this case.

Hertz and Gibson, the remaining Defendants at issue in this summary judgment, present two arguments in favor of their motion for summary judgment. First, Plaintiffs' Section 1981 claim under *respondeat superior* and vicarious liability fails as a matter of law and must be summarily dismissed. Second, Hertz and Advantage were not joint employers of Plaintiffs with All Alliance. The Court will address these arguments below.

"Under Section 1981, 'all persons … shall have the same rights … to make and enforce contracts … as is enjoyed by white citizens,' which in an employment context means protection against discrimination based on race." Felder v. Bradford Health Services, 493 Fed.App'x. 17, 19 (11th Cir. 2012) (quoting 42 U.S.C. § 1981; Webster v. Fulton County., Ga., 283 F.3d 1254, 1256 (11th Cir. 2002)). Therefore, Section 1981 "forbids intentional discrimination based upon race in the making and enforcement of contracts." Cason Enter., Inc. v. Metro. Dade County, 20 F. Supp. 2d 131, 1337 (S.D. Fla. 1998) (citing Rogers v. Mount Union Borough by Zook, 816 F. Supp. 308, 312 (M.D. Pa. 1993)). The rights afforded under Section 1981 extend to nongovernmental discrimination and thus private business dealings. 42 U.S.C. § 1981(c); Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 949 (11th Cir. 1991). Section 1981 claims can be brought in at-will employment situations. Moghadam v. Morris, 87 F.Supp. 2d 1255, 1262 (N.D. Fla. 2000). Section 1981 claims can also be brought against individuals who are not the employers of a plaintiff, if the individual interfered with a plaintiff's contract rights with third

parties. Martinez v. Pavex Corp., 422 F. Supp. 2d 1284, 1291 (M.D. Fla. 2006) (citing Zaklama v. Mt. Sinai Med. Ctr., 842 F.2d 291, 294-95 (11th Cir. 1988)).

Generally, a plaintiff bringing a Section 1981 claim must establish disparate treatment by showing he was a member of a protected class, qualified for the position held, and was subjected to an adverse employment action in contrast with similarly situated employees outside of the protected class. Barnett v. Athens Reg'l Med. Ctr. Inc., --- Fed.Appx. ----, No. 13-11634, 2013 WL 6571123, at *2 (11th Cir. Dec. 16, 2013) (citing Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004)); Zaklama, 842 F.2d at 293; see also Booth v. Pasco County, Fla., No. 8:09-CV-02621-T-30TBM, 2010 WL 2757209, at *7 (M.D. Fla. July 13, 2010) (noting that the elements of a Section 1981 claim are essentially the same as a claim pursuant to Section 1983). The plaintiff is required to establish a *prima facie* case with adequate facts to permit an inference of discrimination. Bailey v. Town of Lady Lake, Fla., No. 5:05-cv-464-Oc-10GRJ, 2007 WL 1655374, at *4 (M.D. Fla. June 7, 2007) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)).

Moreover, a plaintiff must provide proof of intentional discrimination to establish Section 1981 liability. Cason Enter., Inc., 20 F. Supp. 2d at 1337 (citing Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982)). Because proof of discriminatory intent is essential, only direct or inferential modes of proving intentional discrimination, and not a showing of disparate impact through a neutral practice are available under Section 1981. Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999). Since liability under Section 1981 is premised on personal involvement of a defendant it cannot be imposed vicariously. Cason Enter., Inc., 20 F. Supp. 2d at 1337 (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); Boykin v. Bloomsburg

Univ. of Pennsylvania, 893 F. Supp. 378 (M.D. Pa. 1995)). That is, "personal involvement of a defendant is essential." Cason Enter., Inc., 20 F.Supp.2d at 1337 (citing Jett, 491 U.S. at 735).

   i.   _Have Plaintiffs asserted a prima facie case for summary judgment purposes?_

There is no dispute that Plaintiffs are members of a protected class and were qualified to perform their jobs. There is, however, a dispute as to whether Plaintiffs were subjected to disparate treatment. That is, Plaintiffs contest they were fired whereas Defendants contest Plaintiffs abandoned their jobs. Nevertheless, Defendants in this instant motion state, "[t]he dispute over whether the Plaintiffs resigned or were terminated is not a material factual dispute that bars summary judgment." (Doc. #81, at 2). Therefore, for summary judgment purposes the Court will assume that Plaintiffs were fired. See generally Rollins v. McDonnell Douglas Corp., 907 F.Supp. 1514, 1517 (M.D. Fla. 1995) (the court assumed for summary judgment purposes that plaintiff established a _prima facie_ case of retaliation in connection with her termination); Andrews v. CSX Transp., Inc., 737 F. Supp. 2d 1342, 1354-55 (M.D. Fla. 2010) (the court assumed for summary judgment purposes that plaintiff established a _prima facie_ case pursuant to the Family and Medical Leave Act). Further, Defendants do not dispute Plaintiffs were replaced with employees outside of their protected class. So the Court finds for summary judgment purposes Plaintiffs were replaced with employees outside of the protected class. Id. Therefore, having found no material dispute for summary judgment purposes the Court assumes Plaintiffs have established a _prima facie_ case of race discrimination. Id. It is clear that this _prima facie_ case could be brought against All Alliance, a non-party to this

action, but it is unclear whether this *prima facie* case extends to Defendants Gibson and

Hertz. The Court will make the determination based on the Parties' arguments below.

> ii.   Can a defendant be held liable through respondeat superior?

Plaintiffs claim Defendant Hertz is liable pursuant to Section 1981 through the

principles of *respondeat superior* and vicarious liability. (Doc. #64, at ¶38). In response,

Defendants argue Defendant Hertz cannot be liable for Defendant Gibson's alleged

violations of Section 1981 under a *respondeat superior* theory. Since Section 1981 claims

require specific acts and intent to discriminate on the part of each defendant, Defendants

contest there is no evidence of specific acts or an intent to discriminate on the part of

Hertz. Further, Defendants assert Hertz did not have the authority, awareness, or

involvement with the decision to terminate Plaintiffs. In response, Plaintiffs assert Hertz

was doing business as Advantage because Hertz purchased Advantage during a

bankruptcy proceeding.

The Court agrees with Defendants. "Liability under § 1981 is personal in nature

and cannot be imposed vicariously." Cason Enter., Inc., 20 F. Supp. 2d at 1337 (citing

Boykin v. Bloomsburg Univ. of Pennsylvania, 893 F.Supp. 378 (M.D. Pa. 1995)). Proof of

intentional discrimination is required to establish a Section 1981 claim. Cason Enter., Inc.,

20 F.Supp.2d at 1337 (citing Gen. Bldg Contractors Assoc. v. Pennsylvania, 458 U.S.

275, 391 (1982)). Therefore, a plaintiff cannot bring a cause of action pursuant to Section

1981 against an individual not personally involved. Bernard v. Calejo, 17 F. Supp. 2d

1311, 1314-15 (S.D. Fla. 1998).

There is no record evidence that Hertz intentionally discriminated against Plaintiffs

because of their race. In fact, the record evidence demonstrates Hertz was unaware of

who Plaintiffs were and Hertz had no control over All Alliance's employment practices. Therefore, Hertz had no control over Plaintiffs. The record evidence also reveals Hertz had no control over Advantage's employment practices, but instead Advantage's employment practices were independent from Hertz. This is true despite Hertz owning Advantage. There was no active personal involvement of Hertz here.

Plaintiffs' *respondeat superior* claim, if viable, would require the Court to take great leaps to find Hertz liable under Section 1981. The Court would have to assume Defendant Gibson, who was employed by Advantage, a subsidiary of Hertz, purposely discriminated against Plaintiffs and that this intentional discrimination somehow interfered with the employment relationship with All Alliance and Plaintiffs. The Court would also have to leap to impute Defendant Gibson's alleged intentional discrimination to Hertz and assume Hertz intentionally discriminated against Plaintiffs. If the Court made such leaps it would not be soundly rooted in logic or in the record evidence. Therefore, the Court is unwilling to do so.

Based upon the law and the record evidence, summary judgment is appropriate on this *respondeat superior* and vicarious liability issue. Smith v. State of Alabama, 996 F. Supp. 1203, 1212 (M.D. Ala. 1998) ("And Smith cannot rely on *respondeat superior* liability for any of the defendants because such liability is not cognizable under §§ 1981 or 1983.") (citing Braddy v. Florida Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998)); see generally Butts v. County of Volusia, 222 F.3d 891, 893 (11th Cir. 2000) (finding a plaintiff suing a municipality under § 1981 cannot rely on *respondeat superior* to establish liability). Accordingly, to the extent Plaintiffs seek to make Hertz liable pursuant to Section 1981 through *respondeat superior* or vicariously liability, the

Court finds this is wholly improper. Summary judgment is due to be granted with regard to this issue.

    *iii.*    <u>*Was Gibson personally involved in Plaintiffs' employment termination?*</u>

Plaintiffs claim Defendant Gibson was personally involved in Plaintiffs' employment termination because Defendant Gibson either requested, solicited, directed, or insisted upon Plaintiffs' termination. (<u>Doc. #64, at ¶28</u>). Plaintiffs claim this conduct by Defendant Gibson was done in his role as an employee of Hertz doing business as Advantage. (<u>Doc. #64, at ¶28</u>). Further, Plaintiffs assert the decision to terminate Plaintiffs was based on the alleged statement that Defendant Gibson "does not like Black people." (<u>Doc. #64, at ¶28</u>). And ultimately, Defendant Gibson interfered with Plaintiffs' right to contract with their employer through his intentional discrimination. (<u>Doc. #64, at ¶37</u>).

Defendants move for summary judgment on this issue and argue Plaintiffs rely on inadmissible hearsay to support their claims. In addition, Defendants contend Defendant Gibson had no capacity or personal involvement in the hiring or termination decision of All Alliance employees. In response, Plaintiffs argue Defendant Gibson's alleged statement is admissible pursuant to Rule 803(3) of the Federal Rules of Evidence and because "the statement has evidentiary value independent of its truth or falsity." (<u>Doc. #92, at 25</u>). Plaintiffs also assert Defendant Gibson's alleged statement is admissible based on Jimenez's state of mind with regard to why she terminated Plaintiffs. Therefore, Plaintiffs assert there is direct evidence to withstand summary judgment on this issue.

Defendant Gibson does not acknowledge that he made the statement. Jimenez agrees that this statement was never made to her. The record also reveals Plaintiffs did not hear the statement from Defendant Gibson. No one heard the statement made or

admits to the statement, therefore, this alleged statement by Defendant Gibson does not supply direct evidence to support Plaintiffs' position.

Moreover, even assuming that Defendant Gibson made the statement to Jimenez, the record reveals Defendant Gibson did not control who All Alliance hired or fired. Further, it is unclear from the record when the alleged statement was made and whether it had any nexus to the alleged terminating decision. This notion is highlighted by Jimenez's testimony that she was never told to fire Plaintiffs (and that she contests Plaintiffs really abandoned their jobs after one of them argued with her); and, Plaintiffs' testimony that they never heard the statement and were not aware when the purported statement was made. Therefore, there is no sincere inclination rooted in evidence that Gibson interfered with Plaintiffs' at-will employment contracts.

In addition, even assuming that the statement was made by Defendant Gibson, the statement could only be presented improperly at trial as hearsay. A hearsay statement, "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay statements are not permitted because of the concern of their untruthfulness. T. Harris Young & Associates, Inc. v. Marquette Electronics, Inc., 931 F.2d 816, 826 (11th Cir. 1991) (citing United States v. Brown, 548 F.2d 1994, 1205 n. 19 (5th Cir. 1977)). There are exceptions to the hearsay rule that are permitted to be entered into evidence. One exception is referred to as "Then-Existing Mental, Emotional, or Physical Conditions." Fed. R. Evid. 803(3).

Here, Defendant Gibson is the alleged out of court declarant. The matter asserted is the alleged comment that Defendant Gibson does not like Black people. Ultimately,

Plaintiffs hope to use this statement to infer Defendant Gibson influenced Jimenez to terminate Plaintiffs. No one including the declarant, Defendant Gibson, and the listener, Jimenez, would be able to testify that this alleged statement was made at trial. The statement is plainly hearsay and therefore inadmissible. Wiggins v. McHugh, 900 F.Supp.2d 1343, 1356 (S.D. Ga. 2012) (stating that testimony such as this is at best double hearsay).

Further, this alleged statement cannot show Jimenez's state of mind, as argued by Plaintiffs, because Jimenez was not the alleged declarant. As Rule 803(3) plainly states, this exception is only available when there is "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3). Here, because Jimenez is not the alleged declarant and does not believe the statement was made by Defendant Gibson, this alleged statement cannot be brought into evidence at trial under Plaintiffs' Rule 803(3) theory.

This alleged statement is the only evidence Plaintiffs provide to assert Defendant Gibson intentionally discriminated against them. See Wiggins, 900 F. Supp. 2d at 1356 (noting that the only evidence regarding discriminatory intent was the plaintiff's assertion that someone often stated someone else did not like Black people was double hearsay, and even if the comment was made it alone was not enough to present a question of material fact on the issue of discriminatory intent) (citing Rojas v. Florida, 285 F.3d 1339, 1343 (11th Cir. 2002); Beaver v. Rayonier, Inc., 200 F.3d 723, 731 (11th Cir. 1999)); see also Price v. California Dep't. of Corr., No. CIVSo41235GEBDADPS, 2006 WL 707407, at *3 (E.D. Ca. Mar. 21, 2006) (finding that a plaintiff's speculation that her supervisors did not like Black people was too speculative to constitute evidence from which a

reasonable trier of fact could find in favor of plaintiff's claim); Kalema v. U.S. Oil Co., Inc., Civil No. 05-0323(PAM/JSM), 2006 WL 2289849, at *2 (D. Minn. Aug. 8, 2006) (finding that a remark that he "did not like black people" was not made during the decision-making process, and there was no link presented by plaintiff and this comment with regard to the termination). Having found that this statement is inadmissible hearsay and even if stated there is no link to Plaintiffs' employment termination, the Court finds there is no evidence, circumstantial or direct, that Defendant Gibson was personally or intentionally involved in the termination of Plaintiffs. Accordingly, summary judgment is due to be granted on this issue.

> iv.  *Whether Defendants are joint employers?*

The Court must determine which corporate Defendant or Defendants, if any, functioned as Plaintiffs' employer(s).  Plaintiffs claim that All Alliance was the joint employer of Plaintiffs along with Defendants Gibson, Hertz, and Simply Wheelz (Advantage). (Doc. #64, at ¶24). Whereas, Defendants assert these defendants are not the joint employers of Plaintiffs and therefore summary judgment should be granted as it relates to this issue.

Courts consider three factors when determining if there is a joint employer relationship. These three factors are: (1) whether the employment took place on the premises of the alleged employer; (2) how much control the alleged employer exerted on the employees; and (3) whether the alleged employer had the power to fire, hire, or modify the employment condition of the employees. Morrison v. Magic Carpet Aviation, 383 F.3d 1253, 1255 (11th Cir. 2004) (citing Welch v. Laney, 57 F.3d 1004, 1011 (11th Cir. 1995) (quoting Wirtz v. Lone Star Steel Co., 405 F.2d 668, 669-70 (5th Cir. 1968))). Indirect

control is insufficient to deem a defendant as a joint employer. Morrison, 383 F.3d at 1256. Also, the authority or power to control is relevant to the joint employer analysis. Virgo v. Riviera Beach Associates, Ltd., 30 F.3d 1350, 1361 (11th Cir. 1994). The Court will analyze these three factors as they relate to each Defendant.

   a. Hertz

  The record does not show Hertz owned or operated the premises at the Holiday Inn location where Plaintiffs reported to work.   Hertz did not exhibit control over Plaintiffs. Sometimes, Plaintiffs were required to perform duties such as clean cars per Hertz's cleaning standards; and retrieve Hertz cars, insured by Hertz, when Advantage needed more cars for its customers. But this direction did not come from any individual from Hertz directly. Instead this direction came from Defendant Gibson and Luna, Advantage employees. Therefore, Hertz did not give Plaintiffs any work assignments. See In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation, 683 F.3d 462, 471 (3d Cir. 2012) (finding that because defendant did not give the plaintiffs any assignments, among other things, it was not the joint employer of the plaintiffs). Also, there is no persuasive evidence to show Hertz had the power to hire or fire Plaintiffs. Id. Besides, the majority of the Plaintiffs did not believe they worked for Hertz. Also, Hertz had no control over the payroll functions when paycheck issues arose. Alviso-Medrano v. Harloff, 868 F.Supp. 1367, 1373 (M.D. Fla. 1994) (finding, unlike here, that the defendants control over the plaintiff's pay rates weighed in favor of finding joint employment). These facts, therefore, weigh in favor of finding Hertz was not the joint employer of Plaintiffs.

b. Gibson

Defendant Gibson did not own or operate the Holiday Inn location where Plaintiffs mainly reported to work. With regard to control over the Plaintiffs, the evidence shows Defendant Gibson gave general instructions to Plaintiffs regarding work attire. See In re Enterprise, 683 F.3d at 470 (finding mere recommendations not to be dispositive with regard to the issue of control in the context of the joint employment analysis). Defendant Gibson also instructed Plaintiff Jerome when to retrieve extra cars and wash them. Defendant Gibson did, however, tell Plaintiff Jerome to wash his car when he traveled to Fort Myers to work for the day. This directive, however, is diminished by Plaintiff Jerome's own testimony stating that Defendant Gibson was not his boss. Moreover, there is no evidence to show Defendant Gibson had the power to hire or fire Plaintiffs, nor is there evidence to show Defendant Gibson influenced the hiring or firing of Plaintiffs. Defendant Gibson also did not have the power to modify the employee conditions and had no control over the pay rates of Plaintiffs. See Alviso Medrano, 868 F.Supp. at 1373. Further, Gibson did not provide supplies to Plaintiffs to complete their work duties. Upon consideration of the facts and circumstances, the Court does not find Defendant Gibson to be a joint employer of Plaintiffs in this matter.

c. Defendants collectively

Notably, there is a stay pursuant to the bankruptcy proceeding as it relates to Simply Wheelz (Advantage). Accordingly, Advantage's liability is not at issue in this pending summary judgment motion. For the purpose of this analysis, the Court presumes the Parties presented argument to the extent Advantage is labeled a joint employer along with Defendants Gibson and Hertz collectively. Therefore, the analysis below is for the

limited purposes of determining whether Defendants were collectively joint employers with All Alliance.

The Court assumes for summary judgment purposes Plaintiffs worked on the premises either owned or operated by Advantage. After all, there was an Advantage office inside the Holiday Inn building. It is unclear, however, if All Alliance leased the space at the Holiday Inn or Fort Myers airport location so that Plaintiffs could perform their various duties. Nonetheless, in viewing this motion in favor of the non-moving Plaintiffs, the Court will assume Advantage owned the premises and Plaintiffs worked on the premises without All Alliance leasing the location. Clark v. SS Golf Group, Inc., No. 6:11-cv-1449-Orl-31GJK, 2011 WL 6338807, at *2 (M.D. Fla. Dec. 19, 2011) (noting that plaintiffs' jobs on defendant's premises weighed in favor of finding defendant to be a joint employer); see generally Campbell v. Miller, 836 F.Supp. 827, 831 (M.D Fla. 1993). The Court, however, finds Advantage did not own the premises in conjunction with Defendants Gibson and Hertz because there is no evidence to demonstrate such an inference.

Advantage exhibited some control over Plaintiffs. Plaintiffs wore Advantage shirts and represented themselves to the public as Advantage employees. See generally Morrison v. Magic Carpet Aviation, 383 F.3d 1253, 1257 (11th Cir. 2004). Even though it is unclear whether Advantage or All Alliance required Plaintiffs to wear Advantage shirts, the Court finds this fact to weigh in favor of finding Advantage to be a joint employer individually. Id. at 1256-57. This fact, however, seems to have nothing to do with Defendants Gibson and Hertz.

Plaintiffs completed their primary job duties, at least cleaning the cars, by mostly using supplies provided by Advantage through Luna but not Defendants Gibson and

Hertz. This fact weighs in favor of finding Advantage was a joint employer individually but not in conjunction with Defendants Gibson and Hertz.

The Court finds Advantage's general instructions to Plaintiffs regarding cleaning, work attire, and what time to appear at work not to be dispositive of the overall joint employment issue. See In re Enterprise, 683 F.3d at 470 (finding mere recommendations not to be dispositive with regard to the issue of control in the context of the joint employment analysis). Advantage did not provide specific or frequent instructions on how to perform such duties to Plaintiffs. Diaz v. Century Bank, No. 12-21224-CIV, 2013 WL 2046548, at *6 (S.D. Fla. May 14, 2013) ("infrequent assertions of minimal oversight do not constitute the requisite degree of supervision.") (quoting Martinez-Mendoza v. Champion Intern. Corp., 340 F.3d 1200, 1211 (11th Cir. 2003)). And Plaintiffs ultimately followed the schedule of the individuals they replaced rather than following the schedules suggested by Luna. Advantage, through Luna and Defendant Gibson, did not supervise Plaintiffs work. See Alviso-Medrano v. Harloff, 868 F.Supp. 1367, 1372 (M.D. Fla. 1994) (finding there was no evidence that defendants gave specific instructions to the workers, assigned specific tasks, or took an overtly active role in supervising the work and therefore this did not weigh in favor of finding the defendants joint employers of plaintiffs). And the record demonstrates Plaintiffs did not view Defendant Gibson as their boss. The Court finds this weighs in favor of finding Defendants were not joint employers.

Furthermore, All Alliance staff trained Plaintiffs regarding their employment duties; and this fact weighs in favor of not finding Defendants as a joint employer. Morrison, 383 F.3d at 1255. The Court does not find Advantage's determination of the number of employees it needed each day to be convincing with regard to the joint employment issue.

This is especially true in light of All Alliance's control of the day-to-day and managerial functions of Plaintiffs such as their work schedules. All Alliance, not Defendants, determined the pay rates of Plaintiffs and prepared the payroll functions for Plaintiffs. Beck v. Boce Group, L.C., 391 F. Supp. 2d 1183, 1191 (S.D. Fla. 2005) (finding no evidence that defendant determined the pay rates of the plaintiff to weigh in favor of finding no joint employment); cf. Clark, 2011 WL 6338807, at *2 (finding evidence that a defendant maintained the pay records of plaintiffs to weigh in favor of that defendant being the joint employer of plaintiff). Advantage, Gibson, and Hertz had no control over the payroll functions when paycheck issues arose. Alviso-Medrano, 868 F. Supp. at 1373 (finding, unlike here, that the defendants control over the plaintiff's pay rates weighed in favor of finding joint employment). This fact weighs in favor of not finding Defendants as joint employers.

There is some questionable testimony with regard to whether Advantage hired Plaintiffs. For example, Plaintiff Jerome states he was hired by Luna, yet there is testimony that Luna did not have the authority to hire any of the employees of All Alliance. Nonetheless, it is clear that the remaining Plaintiffs were hired by Plaintiff Jerome upon approval of All Alliance, and not Advantage. Further, the record does not show Defendants Gibson and Hertz influenced Advantage or All Alliance with regard to hiring Plaintiffs.

Additionally, the record demonstrates Advantage did not have the power to fire All Alliance employees. The power to fire or hire was reserved for Plaintiff Jerome and All Alliance. Luna, through Advantage, did have influence to modify an employee's work condition by communicating with All Alliance that he did not want a particular person to

work at his location. This occurred, for example, if an employee did not speak English very well but was in a role that required them to communicate with Advantage customers. Luna testified that in situations like this he was not firing an All Alliance employee but was requesting that that particular individual not work at his location. This exhibits that Advantage, through Luna, had some, albeit insignificant, influence on the employment conditions of the All Alliance employees but this does not inevitably show Advantage controlled or had the authority to fire All Alliance employees. Morrison, 383 F.3d at 1255 (noting that even if "a major client can pressure an employer into firing a particular individual [it] does not transmute that client into that individual's employer.").

The record demonstrates Gibson, individually and through Advantage, also did not have the power to hire or fire All Alliance employees. See In re Enterprise, 683 F.3d 462, at 471 (finding that Defendant had no authority to hire or fire, promulgate work rules, set compensation, benefits, schedules, pay rates and did not supervise, discipline, or control employees records and therefore Defendant was not a joint employer). The same is true with regard to Hertz. This fact weighs in favor of not finding Defendants collectively were joint employers.

Upon consideration of the record, factors, and totality of the circumstances, the Court finds Defendants Gibson, Hertz, and Simply Wheelz (Advantage) were not the employers or joint employers of Plaintiffs, individually or collectively, even in viewing the facts in the light most favorable to Plaintiffs.[8] Notably, these Defendants did not have control over the employment functions of Plaintiffs, did not have the power to hire or fire

---

[8] The Court reserves determining joint employment liability with regard to Simply Wheelz doing business as Advantage individually pursuant to the pending stay.

Plaintiffs, and did not modify Plaintiffs' work conditions in a significant manner. Therefore, summary judgment is due to be granted with regard to this issue.

Accordingly, it is now

**ORDERED:**

1. Defendant Hertz Global Holdings, Inc. is **terminated** from this matter.

2. Count II of the Complaint is **DISMISSED**.

3. Motion for Summary Judgment of Defendants The Hertz Corporation, Hertz Global Holdings, Inc., and Terry Gibson (Doc. #81) is **GRANTED**.

4. Plaintiffs' Motion for Judicial Notice (Doc. #90) is **DENIED as moot**.

5. Defendants' Motion to Bifurcate (Doc. #95) is **DENIED as moot**.

6. Defendants' Motion in Limine (Doc. #99) is **DENIED as moot**.

7. The Final Pretrial Conference set for April 10, 2014, is **CANCELED**.

8. The Clerk is directed to (a) terminate Defendant Hertz Global Holdings, Inc. from the docket; (b) terminate the scheduling deadlines and trial schedule as it relates to Defendants Gibson and Hertz; and (c) place a stay flag on the docket as it relates to the remaining Defendant Simply Wheelz, LLC doing business as Advantage.

**DONE** and **ORDERED** in Fort Myers, Florida this 9th day of April, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record